STATE CAPITOL and CAPITOL BUILDINGS The Capitol-Medical Center Zoning Commission has concurrent and coextensive authority with the Federal Government over the zoning and regulation of property within the Capitol-Medical Center Zoning District held by the Veterans Administration Hospital and exclusive authority over the zoning and regulation of property held by the various state agencies in such district. The Attorney General has received your request for an opinion wherein you, in effect, inquire as to the extent of the authority of the Capitol-Medical Center Improvement and Zoning Commission over the Veterans Administration Hospital as well as the various state agencies which maintain facilities with the Capitol Medical Center Improvement and Zoning District. The state statutes relevant to your inquiry are found at 73 O.S. 82.1 [73-82.1] et seq. (1971), as amended. 73 O.S. 82.1 [73-82.1] sets forth the purpose for which the Capitol-Medical Center Improvement and Zoning Commission was created and reads as follows: "It is the purpose of 73 O.S. 82.1 [73-82.1] — 73 O.S. 83.11 [73-83.11] of this Title to provide a comprehensive plan for the orderly development of the district surrounding the State Capitol and the Medical Center of the University of Oklahoma under direct supervision of the state itself, rather than by its governmental subdivisions; to promote the general welfare of the state in respect of the State Capitol, other state properties and the Medical Center of the University of Oklahoma, and the surrounding area; and to promote the general welfare of the several property owners of the area hereinafter described." 73 O.S. 83 [73-83] delineates the boundaries of the Capitol-Medical Center Improvement and Zoning District, and it should be noted that the Veterans Hospital about which you inquire is included within such boundaries. This Section reads as follows: There hereby is created an improvement and comprehensive community zoning district to be known as the 'Capitol-Medical Center Improvement and Zoning District,' to embrace all that portion of the State of Oklahoma situated within the following described boundaries as shown by the plats and records on file in the office of the county clerk of Oklahoma County, Oklahoma: Beginning at the point where the center of Northeast Twenty-third Street intersects the East line of the present right-of-way of the A. T. and S. F. Railway Company, THENCE Southward along said right-of-way to the point where the North line of property abutting on Northeast Sixteenth Street intersects said right-of-way, THENCE Eastward on Northeast Sixteenth Street to the point where said line intersects the West line of North Stiles Avenue, THENCE Southward along said West line of North Stiles Avenue to the North line of Northeast Eighth Street, THENCE Eastward along said North line of Northeast Eighth Street to the West line of North Lottie Avenue, THENCE Northward to the center of Northeast Fifteenth Street, THENCE Westward along said center of Northeast Fifteenth Street to the West line of North Kelley Avenue, THENCE Northward along the West line of North Kelley Avenue to the center of Northeast Thirtieth Street to the West line of North Walnut Avenue, THENCE Southward along said West line of North Walnut Avenue to the center of Northeast Twenty-third Street, THENCE Westward along the center of Northeast Twenty-third Street to the point of beginning; whether or not said land, or any part thereof, shall be within the incorporated limits of any city of the first class." 73 O.S. 83.2 [73-83.2] describes the authority of the Capitol-Medical Center Improvement and Zoning Commission and reads as follows: "The Capitol-Medical Center Improvement and Zoning Commission, after adoption of a master comprehensive plan as hereinafter provided, shall have exclusive authority over the zoning and regulation of the utilization of all property in the above described District and no planning or zoning commission of any subdivision of the state thereafter shall have any authority or jurisdiction within said area. The Commission also shall have authority to approve or disapprove the location and design of any improvements hereafter to be placed upon any land within said District, and no improvement hereafter shall be placed upon any land within said District, unless the location and design thereof shall be approved by said Commission. The word 'improvements' as used in 73 O.S. 82.1 [73-82.1] — 73 O.S. 83.11 [73-83.11] [73-83.11] of this Title shall include but not be limited to: (1) Buildings, including additions to and alterations thereof (2) Highways and thoroughfares, and access facilities thereto (3) Parking lots and facilities (4) All other construction or erections whatsoever, except that the word 'improvements' shall not include existing municipal streets, alleys or utility services, nor the maintenance or improvement thereof, except insofar as the same serve State buildings or are located upon state land." (Emphasis added) A plain reading of the above statutes is determinative of the answer to the second part of your inquiry. Any state agency contemplating any improvements, as that term is defined in 73 O.S. 83.2 [73-83.2], within the Capitol-Medical Center Zoning District, must first obtain the prior approval of the Capitol-Medical Zoning Commission for both the design and location of such improvements. It should be noted that this conclusion is in accordance with the rationale expressed by the Attorney General in his Opinion dated July 17, 1966, addressed to the Executive Secretary of the Capitol Improvement and Zoning Commission and the Medical Center Improvement and Zoning Commission, as well as Opinion No. 64-359, which is dated October 6, 1964, and likewise addressed to the Executive Secretary of the Capitol Improvement and Zoning Commission. The first part of your inquiry raises a more difficult question and requires a review of the applicable federal statutes and related state laws, as well as certain correspondence and actions by federal and state officials stemming therefrom. Exclusive jurisdiction over the land on which the Veterans Administration Hospital in Oklahoma City is located was accepted by the United States in accordance with the provisions of 73 O.S. 355 [73-355], revised statutes, as amended, 40 U.S.C.A., 255, via a letter from the Acting Administrator of the Veterans Affairs to the Governor of Oklahoma dated December 22, 1955. The Federal Government's acceptance of exclusive jurisdiction was made pursuant to the Oklahoma General Act of Cession, 80 O.S. 1 [80-1] — 80 O.S. 2 [80-2] and 80 O.S. 3 [80-3] (1951), and was approved by Governor Raymond Gary on December 13, 1955, with an effective date of 12:00 o'clock midnight on such date. Subsequent to this date, and on the 2nd day of August, 1973, the U.S. Congress enacted Public Law 93-82, with the pertinent part of such act presently being codified as 38 U.S.C.A., 5007, and reading as follows: "The Administrator, on behalf of the United States, may relinquish to the State in which any lands or interests therein under his supervision or control are situated, such measure of legislative jurisdiction over such lands or interests as is necessary to establish concurrent jurisdiction between the Federal Government and the State concerned. Such partial relinquishment of legislative jurisdiction shall be initiated by filing a notice thereof with the Governor of the State concerned, or in such other manner as may be prescribed by the laws of such state, and shall take effect upon acceptance by such State." Pursuant to his authority under this Section, the Administrator of the Veterans Administration by a letter dated November 7, 1975, retroceded and relinquished such measure of legislative jurisdiction as was necessary to establish concurrent jurisdiction of the Federal Government and the State of Oklahoma over the lands comprising the Veterans Administration Hospital in Oklahoma City, Oklahoma. This retrocession of concurrent jurisdiction was effective upon its acceptance by Governor David L. Boren on behalf of the State of Oklahoma on November 14, 1975, which acceptance was authorized by 64 O.S. 162.3 [64-162.3] and 64 O.S. 162.4 [64-162.4] [64-162.4] (1975), now codified as 80 O.S. 12 [80-12] and 80 O.S. 13 [80-13] (1976). These Sections read as follows: "12. The consent of the State of Oklahoma is hereby given to the retrocession of jurisdiction, either partially or wholly, United States of America within the boundaries of Oklahoma, and the Governor of the State of Oklahoma is hereby authorized to accept for the State of Oklahoma such retrocession of jurisdiction. "13. When the State of Oklahoma receives written notice from the duly authorized official or agent of the United States of America that the United States of America desires or is willing to relinquish to the State of Oklahoma jurisdiction, or a portion thereof, over certain lands owned by the United States of America, the Governor may accept such relinquishment when deemed advisable. Upon such acceptance and approval by the Governor retrocession of jurisdiction shall become fully effective upon the filing of the original acceptance and/or approval with the Secretary of State of the State of Oklahoma." Thus, it can be seen that the State of Oklahoma presently possesses concurrent jurisdiction with the Federal Government over the Veterans Hospital land in Oklahoma City. It should be noted that such jurisdiction of the State would be inclusive of only those matters over which it possesses jurisdiction in its own right, and is not necessarily co-extensive with that of the U.S. Government. In light of the above, it becomes apparent that the issues herein entail answering the question of whether or not the Veterans Administration Hospital land is susceptible to the State's zoning laws, due to the retrocession of concurrent jurisdiction for the Veterans Administration to the State. Prior to such retrocession, it is clear that the Veterans Administration Hospital land would not have been so subject to state zoning regulations. See Ann Arbor Township v. United States,93 F. Supp. 341 (D.C. Mich. 1950), where an action by the Township to restrain the United States from completing the construction of a veterans hospital due to a violation of a valid zoning ordinance adopted pursuant to the laws and police powers of the State of Michigan was dismissed on the grounds of lack of jurisdiction. See also, United States v. Chester, 144 F.2d 415 (G.A. 3 P.A. 1944), and the annotation entitled "Applicability of Zoning Regulations to Government Projects or Activities", 61 A.L.R.2d 970, for a general discussion of the applicability of zoning regulations to the Federal Government. However, due to the retrocession of jurisdiction occurring in 1975, it would appear that this body of law would be inapplicable to the instant question. Thus, we arrive at the ultimate question which must be resolved in order to respond to your inquiry, i.e. what are the parameters of the "retrocession of concurrent jurisdiction" which the State of Oklahoma received from the Federal Government in 1975? In the case of Ottinger Brothers v. Clark, 131 P.2d 94 (1942), the Oklahoma Supreme Court considered the question of whether or not the retrocession by the United States Government of certain legislative jurisdiction over Fort Sill acted to vitalize the state laws regarding Workmen's Compensation. The Court held that it did, saying: "In the present case the state had full political jurisdiction over the military reservation until the statute of cession was enacted in 1913. The effect of that statute was to place in abeyance the powers of the Legislature to extend the laws of the state to the reservation. When the Workmen's Compensation Law was enacted in 1915, it did not extend to the reservation by reason of the prior cession of jurisdiction . . . But that law was merely in suspension or abeyance so far as the reservation was concerned. As long as the United States retained the exclusive right to legislate concerning that area as ceded by the state, the state could not apply the statute. However, when Congress receded the jurisdiction to the state by the 1936 Act, supra, the law was no longer in abeyance and applied, ipso facto, to the reservation . . . . "The question here is not one . . . of the adoption of state laws, nor an attempted delegation of jurisdiction by Congress, but a question of relinquishing and revesting in the state a portion of the jurisdiction that the state had temporarily suspended in itself and vested in the Federal Government by its Act of Cession of 1913." Based on the above and foregoing case, as well as the reasoning of the Court in reaching its conclusion, it would seem that the parameters of the "retrocession of concurrent jurisdiction" from the Federal Government to the State of Oklahoma occurring in 1975 should and must be considered to be coextensive with the jurisdiction which the State is entitled to exercise over all the land within the Zoning District, disregarding who owns such land. Under this approach, the Veterans Administration Hospital would, like any other property owner in the District, be required to obtain prior approval from the Capitol-Medical Center Zoning Commission for the location and the design of any improvements it might propose to make. It is, therefore, the opinion of the Attorney General that the Capitol-Medical Center Zoning Commission has concurrent and coextensive authority with the Federal Government over the zoning and regulation of property within the Capitol-Medical Center Zoning District held by the Veterans Administration Hospital and exclusive authority over the zoning and regulation of property held by the various state agencies in such district. (JAMES R. BARNETT)